DESROSIERS BROTHERS

*v.*

CHARLES H. HADEN, II, SUCCESSOR TO CLIFFORD G. LANTZ AS STATE TAX COMMISSIONER OF WEST VIRGINIA

(No. 12900)

Submitted May 19, 1970.          Decided June 30, 1970.

328

*Chauncey H. Browning, Jr.,* Attorney General, *Paul R. Goode, Jr.,* Deputy Attorney General, *Dennis R. Vaughan, Jr.,* Assistant Attorney General, for appellant.

*Robert J. Louderback,* for appellee.

CALHOUN, JUDGE:

This case is before the Court on appeal from a final judgment order of the Circuit Court of Boone County entered on December 31, 1968, which reversed and disallowed a gasoline tax assessment made against Desrosiers Brothers by Clifford G. Lantz, predecessor in office to Charles H. Haden, II, State Tax Commissioner of West Virginia.

The pertinent facts of the case are apparently undisputed. The question presented for decision is whether, in the circumstances of this case, Desrosiers Brothers was a "retail dealer" engaged in selling gasoline and was taxable as such in accordance with provisions of Code, 1931, 11-14-1, as

amended. The word "gasoline" is defined in the statute to include diesel fuel oil. While this case involves a certain amount of diesel fuel oil in addition to gasoline, we will hereafter in this opinion refer to both types of fuel as gasoline.

Code, 1931, 11-14-1, as amended, the statute primarily involved in this case, contains the following definitions:

> "The term 'distributor' shall mean and include every person who refines, produces, manufactures, compounds or blends gasoline in this State for use or for sale to jobbers or consumers, and every person who is now engaged, or who may hereafter engage, in his own name or in the name of his representative or agent in this State, in the selling of gasoline for the purpose of resale or distribution; * * *.

> "The term 'retail dealer' shall mean and include any person not a distributor who sells gasoline in this State to consumers only.

> * * *

> "The term 'sale' shall include any exchange, gift, or other disposition, and 'purchase' shall include any acquisition of ownership."

During the years 1963-1966, Desrosiers Brothers, a partnership which may be referred to hereafter in this opinion merely as Desrosiers, conducted mining operations in Boone County, West Virginia. Desrosiers entered into oral contracts with Mrs. Mary Carruthers and a Mr. Fraley whereby these two persons, primarily Mrs. Carruthers, provided certain heavy equipment which was used in carrying on Desrosiers' mining operations. The oral agreements are referred to in the record as leases and, therefore, Mrs. Carruthers and Mr. Fraley will be referred to hereafter in this opinion as lessors of the heavy equipment.

By the terms of these oral agreements, Desrosiers agreed to pay the lessors a certain amount of money per ton of coal hauled in the leased equipment, depending upon geographical location, weather conditions, accessibility, working conditions, and perhaps other variables. The equipment lessors

had the right to supply their own fuel for the operation of the equipment, but because of the geographical location of the mining operations and other factors, it was sometimes impossible for them to do so. In such circumstances, the fuel consumed in the operation of the leased equipment was supplied by Desrosiers.

Desrosiers purchased gasoline from its distributor, The Texaco Company, the gasoline was transported to the site of Desrosiers' mining operations in Boone County, where it was placed in Desrosiers' bulk storage facilities; and thereafter Desrosiers permitted the equipment, from time to time, to be supplied with gasoline from such bulk storage facilities. A record was kept by Desrosiers of the number of gallons of gasoline used and consumed in the operation of the leased equipment. All the gasoline in question in this case was initially ordered, purchased and paid for by Desrosiers Brothers. All of it was consumed in the operation of the leased equipment in connection with Desrosiers' coal mining operations.

Desrosiers paid West Virginia gasoline excise tax pursuant to the provisions of Code, 1931, 11-14-3, as amended, on all gasoline purchased from the distributor, The Texaco Company, and consumed in its mining operations, including the portion thereof which was consumed in the operation of the leased equipment. Desrosiers applied for and received refunds, pursuant to the provisions of Code, 1931, 11-14-20, as amended, of all taxes paid on all gasoline thus purchased and consumed in its coal mining operations, including the portion of such gasoline which was consumed in the operation of the leased equipment.

On April 2, 1968, based upon facts disclosed by an investigation of the contractual arrangement between Desrosiers and the equipment lessors, Clifford G. Lantz, who was then State Tax Commissioner of West Virginia, issued a tax assessment against Desrosiers in the amount of $3,285.03. Included in the assessment, in addition to the gasoline tax in the amount of $3,089.03, was a $6.00 penalty for failure to have a retail dealer's license for the previous four-year period and a $190.00

penalty for failure to file "Retail Dealers Reports" for the prior thirty-eight-month period.

Desrosiers petitioned for and was granted an administrative hearing. The tax commissioner, after reviewing the evidence taken at the hearing, issued a decision which affirmed the tax assessment previously made. In his decision, the tax commissioner held that Desrosiers was a retail dealer and that the contractual arrangement between Desrosiers and the two lessors of equipment constituted a sale of gasoline within the meaning of Code, 1931, 11-14-1, as amended.

From this decision, Desrosiers appealed to the Circuit Court of Boone County. At the trial of the case in that court, evidence was taken and argument of counsel was heard. On December 31, 1968, the circuit court, sitting without a jury, entered an order holding that Desrosiers "was not a retail dealer and was not engaged in the taxable sale of gasoline under the laws of the State of West Virginia, and, therefore, that the aforesaid assessment and penalty of the defendant against the plaintiff, Desrosiers Brothers, should be set aside and held for naught." From that judgment order, the tax commissioner was granted the appeal to this Court.

In certain unusual circumstances, including adverse weather conditions and the remoteness and comparatively inaccessible locations of the site of the mining operations, Desrosiers, from time to time, supplied not only gasoline which was consumed in the operation of the leased equipment, but also supplied and paid drivers or operators of the equipment and paid for minor repairs to the equipment. At all times, however, the owners of the equipment were paid by Desrosiers on the basis of the tonnage of coal transported by the leased equipment in the furtherance of Desrosiers' coal mining operations.

All the gasoline involved in this case was consumed in the operation of the equipment leased by the two owners while the equipment was being used in furtherance of Desrosiers' coal mining operations. The owners of the equipment normally bought, paid for and directly supplied the gasoline

consumed in the operation of the equipment. The owners of the equipment normally supplied and paid the operators of the equipment and also arranged and paid for repairs to the equipment. It was only in unusual circumstances, and for the mutual convenience of all parties, that these items of expense were sometimes incurred by Desrosiers in order to keep the leased equipment in operation in furtherance of the coal mining operations.

The lessors of the equipment were paid by Desrosiers periodically, approximately on a monthly basis. Desrosiers kept a record of the tonnage of coal transported by the leased equipment. If Desrosiers had incurred no expense in furnishing gasoline and operators for the equipment or for making necessary repairs, the owners were paid the full amount due them, at the agreed rate, for the amount of coal which had been transported by their leased equipment. Otherwise, Desrosiers deducted from the gross amount due the lessors the actual cost to Desrosiers of the gasoline supplied and the expense incurred in paying operators of the equipment and in making necessary repairs to the equipment. After deducting such items of expense incurred by Desrosiers from the gross amount due for the coal transported, the owners of the leased equipment were paid the balance. The net effect was, therefore, that the gasoline in question in this case was purchased by Desrosiers from the distributor, The Texaco Company; supplied by Desrosiers from its bulk storage facilities at the site of the coal mining operations; consumed in the leased equipment in the transportation of coal; and the cost of the gasoline was ultimately paid by the consumers, the owners and lessors of the equipment.

Desrosiers obviously was not a "distributor" but clearly it was a "retail dealer", as defined in the statute, because it sold gasoline to "consumers" in this state. The statutory definition does not require that a "retail dealer" sell gasoline to the general public as "consumers". It is immaterial that the lessors did not pay for the gasoline in cash. This feature of the case is made clear by the following portion of the statute: "The term 'sale' shall include any exchange, gift, or other disposition, and 'purchase' shall include any acquisition of

ownership." Under the provisions of the statute, it is immaterial that Desrosiers did not make a profit from the sale of the gasoline in question. The liability of a "retail dealer" for payment of a gasoline tax is not, under the provisions of the pertinent statute, in any sense dependent upon whether the "retail dealer" makes a profit or suffers a financial loss as a consequence of the sale of gasoline to consumers.

For reasons stated in this opinion, the tax assessment is approved and confirmed and accordingly the judgment of the Circuit Court of Boone County is reversed.

*Reversed.*